High *v.* Reading Transit Company, Appellant.

478

Argued November 13, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*C. H. Ruhl,* for appellant.

*Harry S. Craumer,* for appellee.

OPINION BY CUNNINGHAM, J., December 12, 1929:

By this appeal we are asked to say that the court below erred in declining to enter judgment for the defendant notwithstanding a verdict in favor of the plaintiff for $608.65 as damages for injuries to his automobile and the temporary loss of its use, arising out of an accident in which the automobile was struck by a trolley car operated by an employe of defendant. The appellant transit company has a single track on 10th Street, a north and south street, forty feet in width between curbs, in the City of Reading, upon which it operates cars in a northerly direction.

On the evening of April 21, 1928, plaintiff's automobile was parked in a line of cars along the east curb of 10th Street about midway of the block between Washington Street on the south and Walnut on the north and the collision occurred as plaintiff was attempting to drive his car out of this line to proceed north on 10th Street. Appellant offered no testimony. From the evidence of plaintiff and the witnesses called by him a jury could reasonably find these facts: The night was so wet and foggy that the range of visibility did not exceed seventy-five feet. Cars were parked on both sides of 10th Street but no automobiles were moving in the block when plaintiff entered his car between eight and nine o'clock. There was sufficient space to drive an automobile, when parallel with the track, between the line of parked cars and any trolleys moving on the track. The circumstances immediately attendant upon the accident are thus stated by the learned trial judge in his opinion discharging appellant's rule for judgment n. o. v. and the statement is supported by the evidence: "Both the car in front of plaintiff's

auto and the car in the rear of it were parked about two feet from the front and back, respectively, of plaintiff's car; plaintiff on entering his car backed as far as the space permitted, then went forward, backed again, and, finally, after looking to his rear and seeing nothing coming, and holding out his left hand, swung his car to the left of the car parked in front of him and proceeded in low gear at a speed of about one mile per hour for a distance of four or five feet, or until the left side of his front fender was within nine inches of the eastern rail of the trolley track. At that moment a trolley car traveling at a rapid rate of speed struck plaintiff's auto at the left front fender and proceeded about one hundred feet, dragging the auto, before it came to a stop; the motorman of the trolley car was not at his controls just before or at the time of the collision, and the trolley car at the time of the collision was traveling at a speed of about thirty miles per hour.''

A witness testified that at the time of the impact the motorman was engaged in closing a window on the left side of his cab; the headlight of the trolley and the lights inside were burning. There was evidence from which a jury could find that appellant's motorman was negligent in the operation of the trolley and this, as we understand it, is not seriously disputed by appellant. It is earnestly contended, however, that the evidence also discloses that plaintiff was so clearly guilty of contributory negligence that the trial court should have affirmed appellant's point for binding instructions. The evidence chiefly relied upon in support of this contention was developed in plaintiff's cross-examination and reads: ''Q. When you had completed the second backing process and got back and thought you had a clearance, before you started out you looked down the street? A. Yes, sir, towards Washington Street. Q. And then you started ahead? A. I put my

hand out and then started ahead. Q. You didn't see any car? A. No, sir. Q. No trolley car coming? A. No, sir. Q. You didn't see any coming? A. No, sir. Q. And you didn't look again until you were hit? A. No. I was looking ahead to clear the machine in front of me. Q. You didn't look to see if any car was coming after you left the curb? A. No. It is natural to look the direction you are driving. Q. How far had you proceeded before you were struck after you had looked? A. About four feet.''

As stated by the Supreme Court in Natvig et ux. v. Phila. Rapid Transit Co., 293 Pa. 355—a case somewhat similar, but by no means parallel, on the facts—the crucial points are whether plaintiff looked for the trolley car when he started forward after backing the second time and the distance it was from him at that time. If the night had been clear, plaintiff, by looking immediately before leaving the curb, would have seen the trolley which, under the testimony relative to the respective speeds of the vehicles, must have then been approximately one hundred and thirty feet behind him and approaching at a rate of about forty-four feet per second. Under such circumstances the doctrine invoked by the able and experienced counsel for appellant—that it is vain for one to declare that, at a sufficient distance to prevent a collision and with an unobstructed view, he looked for an approaching car and saw none and was struck the instant he entered the track—would be applicable. But the night was not clear. Plaintiff's testimony is that he did not see the car because of the atmospheric conditions; nor is it clear from his testimony that he advanced to the track upon the angle at which he left the curb; he testified that he had ''started to straighten out'' when the overhang of the trolley caught his automobile.

In his opinion upon the rule for judgment n. o. v. the trial judge assigned these reasons for submitting

the question of plaintiff's contributory negligence to the jury: "Nor can we say as a matter of law that, having looked when he started forward in low gear, he was required to look again before he had proceeded four or five feet: Lamont v. Adams Express Co., 264 Pa. 17. He had to swing his car far enough out into the street to enable him to clear the car ahead; that is, he had to proceed at an angle from the curb. He was alone and could not be held, moving his car into the traffic lane, to assume the risk of an accident due to negligence on the part of others using the highway. He had a right to assume that others using the street would use due caution in accordance with the circumstances to avoid injury to him. He was not bound to anticipate the defendant's trolley car would approach at a reckless speed: Robb v. Quaker City Cab Co., 283 Pa. 454, 458; or that it would not be operated with due care: Kilpatrick v. Phila. Rapid Transit Co., 290 Pa. 288, 293; or that on a dark and rainy and gloomy night a trolley would be operated upon a city street at a rate of speed that would not permit its stoppage within the distance covered by its headlight: Gilmore v. Federal Street, &c., Ry. Co., 153 Pa. 31."

In addition to submitting the question of plaintiff's contributory negligence to the jury in his general charge in a manner to which no exception could justly be taken, the trial judge, at its conclusion and upon the suggestion of counsel for appellant, gave them specific instructions with respect to the duty of plaintiff to look for an approaching car before he drove near appellant's tracks, saying: "As I think I have stated to you, a person driving on the streets is bound to look before he enters upon a railway track or a trolley track to see that there are no trolley cars or railway cars approaching within such a distance as to lead a reasonable person to believe that a collision would occur if he went on. He is bound to look. If he just takes a

chance—without looking, without using due care—and is struck, he is guilty of contributory negligence, and the loss must lie where it fell.''

Where the legitimate inferences which may be drawn from the evidence are not clear beyond peradventure, it is, as a general rule, the province of the jury to pass on the question of plaintiff's alleged contributory negligence: Gearhart v. A. & L. Val. Electric Ry. Co., 93 Pa. Superior Ct. 503.

The case is a close one but, upon a review of the entire record, we are not convinced that it was the clear duty of the court below to declare the plaintiff guilty of contributory negligence as a matter of law. Reference may also be made to Clancy v. Yellow Cab Co., No. 103, Oct. T., 1929 (not yet reported) for a case in which we held that the facts were not so clear as to enable the court to declare plaintiff's contributory negligence.

The conclusion we have reached requires us to overrule the single assignment of error.

Judgment affirmed.