Sharpe et al. *v.* Phila. R. T. Co., Appellant.

Argued September 30, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Charles F. Phillips*, and with him *Bernard J. O'Connell*, for appellant.—A person is bound to see that which is plainly visible at the time it becomes his duty to look: Lessig v. Reading Transit and Light Co., 270 Pa. 299; Barton v. Lehigh Valley Transit Co., 283 Pa. 577, and Watson v. Lit Brothers, 283 Pa. 175.

*C. Donald Swartz*, and with him *Swartz & Campbell*, for appellee, cited: Natvig v. P. R. T., 293 Pa. 355; High v. Reading Transit Co., 97 Pa. Superior Ct. 477.

OPINION BY CUNNINGHAM, J., December 11, 1931:

Plaintiffs brought their action in the municipal court to recover damages for personal injuries, and property damage to the husband plaintiff's automobile, sustained when a trolley car of the defendant collided with the left front and side of the automobile as it

was entering upon the track. The jury awarded $50 to the minor plaintiff, $524, the cost of repairing the automobile, to the husband plaintiff, and $500 (reduced by remittitur to $350) to the wife plaintiff, and we now have these three separate appeals by the transit company from the judgments entered upon the verdicts. Among the errors assigned was the denial of appellant's motion for judgment in its favor n. o. v., based upon its point for binding instructions.

These facts appear from the testimony of the plaintiffs: About 6:30 on the evening of January 24, 1926, the automobile of the husband plaintiff was parked on the north side of Filbert Street, running east and west in the City of Philadelphia, at a point from seventy-five to one hundred feet west of Twelfth Street, running north and south, and was headed west. Appellant operated a single track trolley line on these streets. Some of its cars ran south on Twelfth to the corner of Filbert and, without stopping, turned west on Filbert. The stopping place was on Filbert, between Twelfth and Thirteenth, and was indicated by a sign on a trolley pole located west of the point at which the automobile was parked. Two other automobiles were parked in the rear of plaintiff's, between his car and the house line of Twelfth Street, and at least one directly in front. The husband plaintiff, with his wife and daughter, a high school student, left a restaurant, also on the north side of Filbert between Twelfth and Thirteenth, and entered their car. They were familiar with the locality and with the directions in which appellant operated its cars. The driver's version of the accident reads: ''My family came from New York, and I took them to the restaurant for dinner. We came out—it was getting dark, around six-thirty. My family got in my car, and I got in my car. I looked back, and there was no car in sight. It was a little cold, and it took me some time to start the

car and I looked back, and there was no cars, no automobiles. I stuck my hand out, and my wheel was just turned against the trolley track, because there was another car in front of me, on account of being a fire plug there, and out of a clear sky the trolley hit us." He was asked when he again looked and replied: "I looked again when I was turning my wheel to get away from the curb. As I started to get away from the curb, I looked again to see if there was anything coming to go west on Filbert. ...... My front wheels had just barely reached the car track; that is the wheel on the left-hand side, that is the only wheel that was on the car track. Q. There was no trolley in sight at that time? A. No trolley in sight when I started turning away from the curb."

The wife plaintiff was seated with her husband in the front, and their minor daughter in the rear seat; both testified they also looked for vehicles approaching from the east but saw none. Mrs. Sharpe, after stating she looked while her husband was starting the car, continued: "Q. Did you look again? A. Yes, when he started towards the car track, and the first thing you know that trolley was right on us. Q. How far away was the trolley car when you first saw it? .A. Well, it was right on us." Plaintiff's machine was pushed by the force of the collision into the car parked in front of it and damaged as described in detail in the evidence; each occupant received comparatively slight injuries. Appellant's employes gave an entirely different account of the accident. They testified plaintiff's car was parked at a point west of the trolley stop, and that it was suddenly driven on the track as the trolley car was slowly resuming its trip after having discharged passengers at the regular stopping place. For the purposes of these appeals, however, we must consider the evidence in the light most favorable to the plaintiffs. Under their own testimony we

have a case in which each of the three plaintiffs testified that, being about to enter, in an automobile, upon a trolley track on a city street and having an unobstructed view of from seventy-five to one hundred feet in the direction from which they knew trolley cars would approach, they looked immediately before turning into the track and saw no trolley car approaching but were instantly struck by one. From Carroll v. P. R. R. Co., 12 W. N. C. 348, down, it has been consistently and repeatedly held that it is vain for one to say that he looked, if, in despite of what his eyes must have told him, he drove directly in front of an approaching car. A person is bound to see that which must have been plainly visible at the time it became his duty to look: Lessig v. Reading Transit and Light Co., 270 Pa. 299. That time in this case was immediately before entering upon the track and the husband plaintiff testified he did look at that moment. Under all the authorities he was clearly guilty of contributory negligence and the testimony of his wife and daughter demonstrates they participated in his negligent act. Under such circumstances they are also barred from recovering damages for their injuries: Rhodes v. P. R. R., 298 Pa. 101; Otis et al. v. Kolsky, 94 Pa. Superior Ct. 548. This is not a case of misjudging the speed of an admittedly observed approaching car. There was no suggestion that the headlight of the trolley car was not burning; nor was there any evidence of atmospheric (High v. Reading Transit Co., 97 Pa. Superior Ct. 477) or other conditions which might have prevented plaintiffs from seeing the car which, under their own evidence, must have been within a very few feet of the point where they started to enter the track.

Assuming, as we may for present purposes, there was evidence from which a jury could find appellant's trolley car was negligently operated, we are unanimously of opinion that plaintiffs convicted themselves

so clearly of contributory negligence that the trial judge should have affirmed the transit company's point for binding instructions or the court, in banc, should have entered judgment in its favor n. o. v.

The judgments in favor of the plaintiffs are reversed and judgment is here entered for defendant.